United States District Court
Southern District of Texas

**ENTERED**

August 24, 2022

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ISMAEL RINCON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:21-CV-45 |
| | § | |
| ERNESTO ELIZONDO, III, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

In April 2019, Plaintiff Ismael Rincon had an encounter with the Laredo Police Department, in which officers handcuffed and searched him (Dkt. No. 38 at 5–13). Plaintiff then filed this *pro se* civil rights action against three officers—Ernesto Elizondo, III, Arturo Benavides, and Robert Fernandez, Jr.—and the City of Laredo (*id.* at 2–3). Construing the live pleading liberally, the Court understands Plaintiff is asserting seven claims against Defendants. *See infra* Section I.B.

Now before the Court is Defendants' motion for judgment on the pleadings, or, in the alternative, a motion for a more definite statement (Dkt. No. 18). Having reviewed the arguments, record, and applicable authorities, the motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED** as to Counts 3, 5, and 7, but **DENIED** as to Counts 1, 2, 4, and 6. Nonetheless, Defendants' motion for a more definite statement (Dkt. No. 18) is **GRANTED** as to Counts 1, 2, 4, and 6.

## I.    BACKGROUND

### A. Factual Allegations

At this stage, the Court accepts all well-pleaded facts in the complaint as true.[1]

*Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). Plaintiff alleges the following:

He and his family own two plots of land sitting along the Rio Grande shoreline (Dkt.

No. 38 at 4). One parcel is an "unimproved" piece of land with no structures (*id.*). On

two occasions, when Plaintiff parked his truck on the unimproved lot, unknown

persons vandalized the vehicle (*id.*). In response, Plaintiff filed a report with Laredo

PD and began patrolling the lot on certain nights (*id.* at 5). His patrols would occur

anywhere between 10:00 p.m. and 2:00 a.m. (*id.*).

Just after midnight, in the early morning of April 27, 2019, as Plaintiff

patrolled his unimproved lot, Plaintiff carried a rifle over his shoulder, with the

muzzle pointed at the ground (*id.*). At some point, Elizondo arrived and questioned

Plaintiff (*id.* at 6).[2] Although Plaintiff explained he was patrolling his own property,

Elizondo countered with his belief that the land actually belonged to the City (*id.*).

Elizondo asked for Plaintiff's identification, and Plaintiff refused (*id.*). Elizondo then

---

[1] Plaintiff filed his complaint with two video exhibits: the dashcam footage of a police vehicle present at the scene and the bodycam footage from Officer Benavides (Ex. Nos. 3 and 4, respectively). "The Court considering a Rule 12(c) motion may consider: (a) documents attached to the complaint or identified as central to the claims made therein; (b) documents attached to the motion to dismiss that are referenced in the complaint; and (c) documents that are subject to judicial notice as public record." *Ayala v. Aransas Cnty.*, No. 2:15-cv-335, 2018 WL 10373638, at *2 (S.D. Tex. Jan. 16, 2018) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)). Further, "where video recordings are included in the pleadings, as is the case here, the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[2] There is no video footage of Plaintiff's initial interactions with Elizondo before the other officers arrived.

radioed for more police units (*id.* at 7). While waiting for additional officers to arrive, Elizondo pointed his gun at Plaintiff, and Plaintiff held his hands in the air (*id.*). Elizondo patted Plaintiff down and confiscated Plaintiff's rifle (*id.*).

After more police officers arrived, Elizondo began inspecting Plaintiff's weapon, and Plaintiff started filming the encounter on his cell phone (*id.* at 7–8). Plaintiff repeatedly asked Elizondo for his name, and Elizondo grabbed a hold of Plaintiff's cell phone (*id.* at 8–9). In an attempt to confiscate it, Elizondo "began to push the phone into [Plaintiff's] chest and throat, forcing [Plaintiff] back several feet" (*id.* at 8–9). Then, at Elizondo's direction, Fernandez handcuffed Plaintiff (*id.* at 9).

At this point, Fernandez twisted Plaintiff's wrist and arm, and Plaintiff told officers that this caused him pain (*id.* at 9). Then, Fernandez and Elizondo searched Plaintiff's pockets, with Fernandez continuing to twist Plaintiff's arm (*id.* at 9–10). Fernandez's twist caused Plaintiff's shoulder to "pop" and he exclaimed in "intense pain" (*id.* at 10). Fernandez continued this hold for "several moments" (*id.*). In all, Plaintiff was handcuffed for approximately 15 minutes while officers reviewed the contents of Plaintiff's wallet, confirmed his identification, and ran his name for outstanding warrants (*id.* at 11). While Plaintiff was handcuffed, officers told Plaintiff not to resist and informed him that, recently, someone reported a shooting in the area (*id.* at 10; Ex. No. 4 at 6:20–33).

After officers released Plaintiff from his handcuffs, Plaintiff started a second cell phone recording (Dkt. No. 38 at 11.). At this time, Elizondo held Plaintiff's rifle and spoke to him (Ex. No. 4 at 18:20). Benavides then directed his flashlight at

Plaintiff and his cell phone (Dkt. No. 38 at 11; Ex. No. 4 at 18:22). Then, Elizondo took Plaintiff's phone again, stopped the recording, and handed the phone back to Plaintiff (Dkt. No. 38 at 11). Elizondo told Plaintiff to put the phone in his pocket, but Plaintiff held the phone in his hand in a recording position (*id.*; Ex. No. 4 at 18:49–55). Elizondo then returned Plaintiff's rifle to him, and officers left the scene (Ex. No. 4 at 18:49–55).

Plaintiff alleges the handcuffing caused wrist lacerations, temporary loss of hand sensation, and injury to his rotator cuff (Dkt. No. 38 at 12–13). He allegedly received medical attention for these handcuff-related injuries (*id.* at 12).

### B. Procedural History

After the incident, Plaintiff filed this lawsuit, which asserts 7 claims against Defendants:

1. A First Amendment claim against Elizondo for infringing on his right to film the police when he confiscated Plaintiff's cell phone twice;

2. A Fourth Amendment unreasonable seizure claim against Elizondo for confiscating Plaintiff's phone twice;

3. A Fourth Amendment unreasonable search and seizure claim against Elizondo and Fernandez for handcuffing Plaintiff and searching him for, and seizing, his wallet;[3]

4. A Fourth Amendment excessive force claim against Elizondo for pushing Plaintiff's throat and chest;

5. A Fourth Amendment excessive force claim against Fernandez for twisting Plaintiff's shoulder while he was handcuffed;

6. A First Amendment claim against Benavides for infringing on

---

[3] In his enumerated causes of action, Plaintiff accuses only Elizondo of this constitutional violation (Dkt. No. 38 at 15). However, later in the complaint, Plaintiff accuses Fernandez of the same violation (*id.* at 20).

Plaintiff's right to film the police when he directed his flashlight beam into Plaintiff's cellphone camera; and

7. An unconstitutional failure-to-train or supervise claim against the City, based on the presence of a police lieutenant who "failed to restrain the complained of officers."

(*id.* at 13–19; Dkt. No. 36 at 14).[4]

The Defendants filed a joint motion for judgment on the pleadings under Rule 12(c), or in the alternative, a motion for a more definite statement under Rule 12(e) (Dkt. No. 18). The motion asserts that the individual officers are entitled to qualified immunity on Plaintiff's claims and that Plaintiff's claim against the City was inadequately pled (*id.* at 3, 19). Plaintiff filed a response (Dkt. No. 36).

## II.   LEGAL STANDARD

### A.   Judgment on the Pleadings

"The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). "To survive a motion for a judgment on the pleadings, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (cleaned up) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This inquiry requires two steps. *Id.* First, the Court must "identify the complaint's well-pleaded factual content," setting aside any unsupported legal conclusions. *Id.* Second, the

---

[4] Although Plaintiff's complaint states the Defendants also violated his Second Amendment rights, this remark is, at best, a passing reference (Dkt. No. 38 at 1). This claim is not enumerated under a separate count. Rather, it is contained in a broad, introductory paragraph (*id.*). To the extent the Plaintiff wishes to assert this claim, the pleadings do not give Defendants fair notice.

Court assesses whether the allegations are plausible. *Id.*

If, after viewing the factual allegations in the light most favorable to the plaintiff, the district court finds the claim is implausible or cannot reasonably infer the defendant is liable for the alleged misconduct, dismissal is proper. *Iqbal*, 556 U.S. at 678. Assessing a complaint for plausibility is a "context-specific task," and the court must "draw on its judicial experience and common sense." *Id.* at 679. Notably, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

## B.   Qualified Immunity

Qualified immunity "attempts to balance two competing societal interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). As such, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because qualified immunity is "immunity from suit rather than a mere defense to liability," a district court should resolve the issue at the earliest possible stage of litigation. *Pearson*, 555 U.S. at 231–32.

To overcome qualified immunity, a plaintiff must show (1) the official's conduct violated a statutory or constitutional right and (2) the right was clearly established at the time of the challenged conduct. *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). A court can begin its assessment with either prong, but both must be satisfied to deny

immunity. *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).

With respect to the second prong, a plaintiff must point to case law showing the federal right is "sufficiently clear to put a reasonable officer on notice that certain conduct violates that right." *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998); *see Lincoln v. Turner*, 874 F.3d 833, 849 (5th Cir. 2017) ("At [the motion to dismiss] stage, [the plaintiff] has the burden to demonstrate that the law was clearly established in this area on the date of the incident."). That is, the right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Lincoln*, 874 F.3d at 848 (quoting *Lincoln v. Barnes*, 855 F.3d 297, 301 (5th Cir. 2017)). "This inquiry does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (cleaned up) (quoting *Barnes*, 855 F.3d at 301). When evaluating whether the law was clearly established, "the subjective intent of the public official is irrelevant[.]" *Sanchez*, 139 F.3d at 467 (citations omitted).

### III.  ANALYSIS

### A.  Claims 1 & 6: First Amendment Claims Against Elizondo and Benavidez

Plaintiff claims Elizondo and Benavides violated his First Amendment right to record the police—as established by *Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017)—when they interfered with his cellphone recordings (Dkt. No. 38 at 13–14; 18–19). According to Plaintiff, the following events amounted to constitutional violations: when Elizondo took his phone twice, when Elizondo disabled the phone's recording feature, and when Benavides directed his flashlight beam into Plaintiff's

cellphone camera to interfere with, and affect the quality of, Plaintiff's recording (*id.*). Defendants' motion argues a First Amendment right to record the police was not clearly established at the time of the incident (Dkt. No. 18 at 9–12). The Court concludes Plaintiff has only partially pleaded a valid First Amendment claim. Given his *pro se* status, he is granted leave to replead.

The First Amendment prohibits certain direct limits on individual speech and "adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Relevant here, *Turner* established a "First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions." *Turner*, 848 F.3d at 688. In *Turner*, the plaintiff was detained and arrested after police approached him while he was filming the police station. *Id.* at 683. Courts have typically analyzed and applied *Turner* in similar police-retaliation contexts. *See, e.g., Kokesh v. Curlee*, 14 F.4th 382, 396–97 (5th Cir. 2021); *Noles v. Dial*, No. 3:20-cv-3677, 2021 WL 4255640, at *5 (N.D. Tex. Aug. 25, 2021), *R. & R. adopted*, No. 3:20-cv-3677, 2021 WL 4244780 (N.D. Tex. Sept. 17, 2021); *Gray v. City of Denham Springs*, No. CV 19-00889, 2021 WL 1187076, at *7 (M.D. La. Mar. 29, 2021); *Holmes v. Reddoch*, No. CV 19-12749, 2021 WL 1063069, at *14 (E.D. La. Mar. 18, 2021), *vacated and remanded on other grounds,* No. 21-30164, 2021 WL 5913297 (5th Cir. Dec. 14, 2021).

However, Plaintiff has not sufficiently pled a First Amendment retaliation

claim.[5] To do so, Plaintiff must allege "(1) [he] was engaged in constitutionally protected activity; (2) the officer's action caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officer's adverse actions were substantially motivated against [his] exercise of constitutionally protected activity." *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021). Regarding the second element, the Fifth Circuit has held that "some retaliatory actions—even if they actually have the effect of chilling the plaintiff's speech—are too trivial or minor to be actionable as a violation of the First Amendment." *Keenan*, 290 F.3d at 258. As for the third element, a plaintiff must plausibly allege that an officer's retaliatory motive caused the constitutional violation. *Batyukova*, 994 F.3d at 730. In other words, "[a] First Amendment retaliation claim fails if the 'action would have been taken anyway.'" *Id.* (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)).

Here, Plaintiff has sufficiently alleged the first element by referencing the right to record the police, which was established by *Turner* two years before the events at issue. However, Plaintiff has not sufficiently alleged the second and third elements as to Elizondo and Benavides. As to Elizondo, Plaintiff does not allege that Elizondo's second phone confiscation, which was brief and nonviolent, would have chilled the recording activity of an individual of ordinary firmness. Further, while Plaintiff is entitled to a reasonable inference that Elizondo's shoving during the first confiscation could chill an individual of ordinary firmness from recording police

---

[5] Nor has he identified an alternative theory of the alleged First Amendment violations.

9

encounters, the current allegations do not plausibly show the shoving or the confiscation was substantially motivated by the recording. Even after viewing the allegations in the light most favorable to Plaintiff, other circumstances unfolding at the time indicate Elizondo may have had other reasons to forcefully confiscate Plaintiff's phone. For example, did Elizondo have a reasonable need to take the phone in order to effectuate Plaintiff's handcuffing and detention? Was Plaintiff aggressively approaching Elizondo as Elizondo was examining Plaintiff's weapon?

So too with Benavides. Based on the current allegations, Plaintiff it is not entitled to a reasonable  inference that shining a flashlight would chill an individual of ordinary firmness from recording police activity. Likewise, Plaintiff does not plausibly allege that Benavides' flashlight interference was substantially motivated by the recording. These events occurred around midnight. Given the darkness at the scene and the need for illumination in the presence of a firearm, the current allegations are too conclusory. Plaintiff must clarify his allegations, if he can truthfully do so, as to these elements in order to plausibly plead a retaliation claim.

In sum, Plaintiff has not pled sufficient factual allegations to state a First Amendment retaliation claim. However, because (1) motions to dismiss are "viewed with disfavor" and are "rarely granted," (2) the standards for deciding motions to dismiss are "identical" to those for motions for judgment on the pleadings, and (3) *pro se* plaintiffs should be afforded an opportunity to replead if it is not futile to do so, the Court will allow Plaintiff to replead this claim. *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013); *Waller*, 922 F.3d at 599; *D'Aquin v. New Orleans Mission*, No. CV 16-

12852, 2017 WL 3382455, at *3 (E.D. La. Aug. 7, 2017) (granting alternative motion for more definite statement); *Lincoln*, 874 F.3d at 839 ("Many difficulties of determining the adequacy of pleadings could be avoided by the district court's ordering a plaintiff to 'file a reply tailored to an answer pleading the defense of qualified immunity.' . . . The district court may require particularized pleading of facts responsive to the defendant's plea of immunity.") (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995)).

Accordingly, Defendants' motion for judgment on the pleadings is **DENIED** as to Plaintiff's First Amendment claim, but their motion for a more definite statement is **GRANTED** as to this claim.

### B. Claims 2 & 4: Fourth Amendment Claims Against Elizondo for Cellphone Seizure and Excessive Force

Plaintiff claims Elizondo violated his Fourth Amendment rights when Elizondo took his cell phone twice and shoved him in the chest and throat during one attempt to do so (Dkt. No. 38 at 14–17). Because these claims are so factually interrelated to the First Amendment claims discussed above, *see supra* Section III.A, Defendants' request for judgment on the pleadings as to these claims is **DENIED**. Instead, Defendants' alternative motion for a more definite statement regarding these claims is **GRANTED**.

### C. Claim 3: Fourth Amendment Unreasonable Search and Seizure Claim Against Elizondo and Fernandez Based on Plaintiff's Detention and His Wallet's Search and Seizure

Plaintiff claims Elizondo and Fernandez violated his Fourth Amendment rights when they detained him, seized his wallet, and searched the wallet for

identifying information "absent warrant or valid cause" (Dkt. No. 36 at 13; Dkt. No. 38 at 15). Defendants argue these claims are barred by qualified immunity (Dkt. No. 18 at 18–19). According to Defendants, Plaintiff has merely alleged a valid *Terry* stop (*id.*). The Court agrees. Elizondo and Fernandez are entitled to qualified immunity on these claims.

"Police officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot." *Davila v. United States*, 713 F.3d 248, 258 (5th Cir. 2013) (cleaned up) (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)). Such an encounter is commonly called a "*Terry* stop." *See Terry v. Ohio*, 392 U.S. 1 (1968). The reasonableness of such a stop is determined by examining (1) whether the stop was justified at its inception, and (2) "whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." *Davila*, 713 F.3d at 258 (quoting *United States v. Rains*, 615 F.3d 589, 594 (5th Cir. 2010)). A stop is justified at its inception if the police officer has reasonable suspicion, as evidenced by "specific and articulable facts . . . taken together with rational inferences from those facts." *Id.* (quoting *United States v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009)). "This standard 'requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence.'" *Id.* (quoting *Rodriguez*, 564 F.3d at 741). Courts "assess the reasonableness of the stop by conducting a fact-intensive, totality-of-the circumstances inquiry, and considering the information available to the officers at the time of the decision to stop a person." *Id.* (cleaned up). "Relevant

facts and considerations may include a description of a suspect, a suspect's location and proximity to known or reported criminal activity, the timeliness of information or the stop, a suspect's behavior, and the officer's experience." *United States v. Alvarez*, 40 F.4th 339, 346 (5th Cir. 2022).

As to Plaintiff's allegations of an unlawful detention, the Court concludes that he has not adequately pled a Fourth Amendment violation.[6] Elizondo and Fernandez had reasonable suspicion to stop and briefly detain Plaintiff in handcuffs.[7] According to Plaintiff's own video exhibit, the officers on the scene were aware of, if not actively investigating, a recent shooting near the Rio Grande, and Plaintiff has not refuted these claims (Ex. No. 4 at 6:20–40) (officer explaining there was a "shooting just a little bit ago in this area"). The officers explained that a gunshot from the Mexican side of the river hit someone on the U.S. side (Ex. No. 4 at 18:49–55; Dkt. No. 36 at 7). Elizondo observed Plaintiff carrying a rifle on an empty, unlit lot that abuts the river, in the middle of the night (Dkt. No. 38 at 4). *See also* Ex. No. 4 at 6:20–28 (officer asserting it was "suspicious" for Plaintiff to have been found "by the riverbanks"). As the officers' interaction with the Plaintiff continued, Plaintiff refused to identify himself, even after claiming he owned the unimproved lot (Dkt. No. 38 at

---

[6] As a preliminary matter, the Court notes that Plaintiff's response seemingly concedes the detention was valid—he admits "the possibility of the need for a *Terry* pat down," and focuses exclusively on the validity of the search of his wallet (Dkt. No. 36 at 12–13). However, the Court will analyze the claim as though it has not been waived.

[7] It can be reasonable for a police officer to handcuff a suspect during a valid investigatory stop. *Smith v. Heap*, 31 F.4th 905, 911 (5th Cir. 2022). Here, considering the circumstances, including the reasonable inference that Plaintiff could have been concealing another weapon on his person, handcuffing him was reasonable.

6–7). Under the totality of the circumstances, it was reasonable for Elizondo and Fernandez to briefly stop and detain Plaintiff while they confirmed his identity and land ownership and ensured that he was not connected to the recent shooting in the area.[8] Thus, even after accepting Plaintiff's allegations as true—as the Court must—he is not entitled to a reasonable inference that a Fourth Amendment violation occurred on these grounds.

Finally, even if Plaintiff's stop violated the Fourth Amendment, Plaintiff has not shown it violated clearly established law. Plaintiff has not cited any case law on this point. *See Lincoln*, 874 F.3d at 849 ("[The plaintiff] has the burden to demonstrate that the law was clearly established in this area on the date of the incident.").

As to Plaintiff's allegations concerning the search of his wallet, the Court concludes Plaintiff has not demonstrated the search of his wallet was impermissible under clearly established law. Plaintiff points to *Johnson v. Thibodaux City* for the following proposition: "Under the Fourth Amendment, police officers may not require identification absent an otherwise lawful detention or arrest based on reasonable suspicion or probable cause." 887 F.3d 726, 733 (5th Cir. 2018). However, *Johnson* is distinguishable. In that case, the police validly stopped a car to arrest its driver, who had an outstanding warrant. *Id.* at 734. But even after the driver was arrested, the

---

[8] Plaintiff concedes that his detention lasted 15 minutes while the officers confirmed his identity and ensured he did not have active warrants (Dkt. No. 38 at 11). This was a reasonable detention because it was "temporary and last[ed] no longer than [was] necessary to effectuate the purpose of the stop[.]" *Johnson v. Thibodaux City*, 887 F.3d 726, 734 (5th Cir. 2018) (quoting *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004)). *See also United States v. Abdo*, 733 F.3d 562, 566 (5th Cir. 2013) (holding a 15-minute *Terry* detention while police checked for outstanding warrants was reasonable).

14

police kept the car's other passengers detained until they were identified. *Id.* The Fifth Circuit held that the continued detention of the passengers for identification purposes was impermissible—it had nothing to do with the original purpose of the stop, and no other reasonable suspicion existed. *Id.* Here, the officers had reasonable suspicion to detain Plaintiff. Moreover, confirming Plaintiff's identity was intrinsically related to the initial purpose of the stop—to confirm whether Plaintiff was involved in the recent shooting and whether he owned the land he was patrolling.

Finally, Plaintiff cites no case law that specifically establishes a *Terry* pat down cannot include the search of a wallet for identification, and the Court cannot conclude that such a rule was clearly established at the time of the incident. On one hand, *Terry* only explicitly authorized a pat down for weapons. *Terry*, 392 U.S. at 30–31. On the other hand, the Fifth Circuit—in 2018, a year before this incident—held that officers were entitled to qualified immunity for searching a detained suspect's wallet. *Emesowum v. Cruz*, 756 F. App'x 374, 381 n.3 (5th Cir. 2018) ("[A]n officer may check an individual's identification in his wallet during a *Terry* stop.") (quoting *United States v. Brown*, 366 F.3d 456, 461 (7th Cir. 2004)).[9] In light of this conflicting case law and Plaintiff's failure to address it, the Court concludes that Plaintiff has not shown the law was clearly established as to the challenged wallet-search. In sum, Elizondo and Fernandez are entitled to qualified immunity on these Fourth Amendment claims. Judgment on the pleadings is **ENTERED** as to these claims.

---

[9] The Fifth Circuit has continued to cite this proposition with approval. *McCullough v. Wright*, 824 F. App'x 281, 287 (5th Cir. 2020) (same).

### D.   Claim 5: Fourth Amendment Claim Against Fernandez for Excessive Force

Plaintiff claims Fernandez violated his Fourth Amendment right to be free from excessive force when Fernandez twisted his handcuffed arms, causing wrist and shoulder injuries (Dkt. No. 38 at 17–18). However, Plaintiff concedes the twisting occurred in response to Plaintiff's resistance to being detained[10] (Dkt. No. 36 at 13) ("[Plaintiff] suffered injury to his wrists and shoulder when he attempted to turn away and prevent the search and seizure."). Plaintiff's video evidence also confirms that the officers told Plaintiff he was "resisting" and asked him to "settle down" shortly after Plaintiff attempted to jerk his hands away from Fernandez (Ex. No. 4 at 2:40–3:04). Defendants assert this claim is barred by qualified immunity because Plaintiff does not sufficiently allege Fernandez acted unreasonably (Dkt. No. 18 at 13). The Court agrees.

"The Fourth Amendment's right to be free from unreasonable seizures governs excessive-force claims." *Roque v. Harvel*, 993 F.3d 325, 332 (5th Cir. 2021). To prevail on an excessive-force claim, a plaintiff must show (1) an injury[11] (2) that directly

---

[10] As previously discussed, Plaintiff's detention was reasonable. *See supra* Section III.C. However, to the extent Plaintiff maintains his challenge to the legitimacy of his detention, his "excessive force claim is separate and distinct from [his] unlawful arrest claim, and [the Court] must therefore analyze the excessive force claim without regard to whether the arrest itself was justified." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007).

[11] Plaintiff's alleged rotator cuff injury—which required treatment by "injection, immobilization, and medication"—is sufficient to fulfill the injury prong of the excessive force analysis. However, as alleged, his wrist injuries do not satisfy the element. *See, e.g., Freeman*, 483 F.3d at 416–17 (rejecting as *de minimis* the plaintiff's claim "that the deputies twisted her arms behind her back while handcuffing her, 'jerked her all over the carport,' and applied the handcuffs too tightly, causing bruises and marks on her wrists and arms"); *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) ("As [Plaintiff] does not allege any degree of physical harm greater than *de minimis* [acute wrist contusions] from the handcuffing, we find that he has not satisfied the injury requirement of a § 1983 claim.").

resulted from a use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable. *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015).[12] Because officers must be allowed to make split-second judgments in circumstances that are "tense, uncertain, and rapidly evolving," evaluating an excessive-force claim is "necessarily fact-intensive." *Darden v. City of Fort Worth*, 880 F.3d 722, 728–29 (5th Cir. 2018); *see Scott v. Harris*, 550 U.S. 372, 383 (2007) (noting courts have an obligation to "slosh" through "the factbound morass of 'reasonableness'" in excessive-force cases).

If deadly force is not at issue, a court considers three factors to determine whether the use of force is reasonable: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Joseph*, 981 F.3d at 332; *Barnes v. Felix*, 532 F. Supp. 3d 463, 469 (S.D. Tex. 2021). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Davila*, 713 F.3d at 259–60 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "Officers are 'authorized to take such steps as are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" *Id.* at 260. (quoting *United States v.*

---

[12] To clarify, "the Fourth Amendment's objectively reasonable analysis does not collapse with the clearly established law's reasonableness inquiry, such that one reasonableness inquiry covers both bases. Reasonableness plays two distinct roles, informing the Fourth Amendment merits (was the use of force reasonable?) and the clearly established law (was the officer's understanding of his authority to use force reasonable?)." *Joseph*, 981 F.3d at 332 n.42 (cleaned up) (internal citations omitted).

*Hensley,* 469 U.S. 221, 235 (1985)).

Here, the officers were investigating Plaintiff's possible involvement in a cross-border shooting, which implicates serious criminal activity. Further, Plaintiff admitted that he moved his body to resist his detention just before Fernandez twisted the handcuffs (Dkt. No. 36 at 13). Plaintiff's video exhibit also shows that he attempted to pull his handcuffed arms out of Fernandez's grasp (Ex. No. 4 at 2:43). The video also shows that minutes after Plaintiff stopped resisting, Fernandez switched to a more relaxed, seemingly one-handed hold of Plaintiff's arm and eventually let go entirely (Ex. No. 4 at 5:44–17:35). In light of the foregoing, Fernandez used a reasonable, non-excessive amount of force to subdue Plaintiff's resistance.[13] Thus, Plaintiff is not entitled to the reasonable inference that Fernandez's actions were clearly excessive or objectively unreasonable.

Finally, even if Plaintiff had pled a viable excessive force claim, he has not pointed to any case law to show a violation of a clearly established right. This is fatal to his claim since "[e]xcessive force incidents are highly fact-specific and without cases squarely on point, officers receive the protection of qualified immunity." *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 383 n.1 (5th Cir. 2009). Thus, judgment on the pleadings is **ENTERED** as to Plaintiff's excessive force claim against Fernandez.

---

[13] *See Johnson v. City of Bastrop*, No. CV 15-2463, 2016 WL 7116191, at *5 (W.D. La. Dec. 6, 2016) (concluding that an officer's conduct in twisting an arrestee's arms behind his back in order to handcuff him was "a fairly common and ordinarily accepted and non-excessive way to detain an arrestee").

### E.   Claim 7: *Monell* Claim Against City of Laredo for Failure-to-Train or Supervise

In his live pleading, Plaintiff did not enumerate a cause of action against the City of Laredo (*see* Dkt. No. 38). However, in his prayer for relief, Plaintiff asserted "the City of Laredo allowed [the officer defendants] to act unfettered in violation of the Constitution" (*id.* at 20). In response to Defendants' motion, Plaintiff clarified that this statement was an attempt to assert a failure-to-train or supervise claim against the City (Dkt. No. 36 at 14). Specifically, Plaintiff claimed that because a supervisor named Lieutenant Ramirez was present at the scene and failed to "act in any way or at any time to restrain the complained of officers," the City is liable for the officers' constitutional violations (*id.*). Even assuming Plaintiff gave sufficient notice of this cause of action, his allegations are not sufficient to make out a successful municipal liability claim.

Under *Monell*, a municipality can be liable for a number of constitutional torts, including unconstitutionally failing to train or supervise its employees. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001); *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022). "*Monell* claims require three elements: '(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose moving force is the policy or custom.'" *Arnone v. Cnty. of Dallas Cnty.*, 29 F.4th 262, 265–66 (5th Cir. 2022) (cleaned up) (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (en banc)).

Here, Plaintiff's claim fails on the first prong: he does not allege the

involvement of a policymaker. Plaintiff identifies Lieutenant Ramirez as the "supervisor" of the incident.[14] However, Plaintiff does not allege, or point to state law to show, that Ramirez was an "official whose decisions represent the official policy of the local governmental unit" or had "the power to make official policy on a particular issue." *Id.* at 266 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). "Absent proper identification of a policymaker, Plaintiff's pleading fails to satisfy the first element to establish municipal liability." *Vasquez v. Jalomo,* No. 5:18-cv-53, 2020 WL 10051757, at *7 (S.D. Tex. Jan. 15, 2020), *R. & R. adopted*, No. 5:18-cv-53, Dkt. No. 18 at 1 (S.D. Tex. Feb. 9, 2020).[15] Thus, Plaintiff's *Monell* claim against the City of Laredo is dismissed.

---

[14] "While municipalities can be sued directly under § 1983, *Monell* establishes that they 'cannot be found liable on a theory of vicarious liability or respondeat superior.' In other words, 'the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability.'" *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (cleaned up) (citations omitted).

[15] Even if Plaintiff had asserted Ramirez was a policymaker, such an argument would likely have been unavailing. In many similar cases, courts have found a city's chief of police, not a supervising lieutenant, to be the relevant policymaker. *See, e.g.*, *Kovacic v. Larry Brown Enters.*, No. 5:09-cv-2, 2010 WL 582547, at *6 (S.D. Tex. Feb. 11, 2010), *rev'd on other grounds sub nom. Kovacic v. Villarreal*, 628 F.3d 209 (5th Cir. 2010), *reconsidered on other grounds*, No. 5:09-cv-2, 2011 WL 13247929 (S.D. Tex. July 11, 2011) ("[A] reasonable jury could conclude that [the] Police Chief [] was the 'policymaker' for the Laredo Police Department, that his 'edicts or acts may fairly be said to represent official policy' as described in *Monell*. Indeed, courts have routinely held chiefs of police to be 'law enforcement policymakers for the purposes of municipal liability under § 1983.'") (citations omitted) (collecting cases). *See also Chadwick v. City of Missouri City*, No. 4:13-cv-2151, 2014 WL 5901978, at *10 (S.D. Tex. Nov. 12, 2014) ("[Plaintiff's] contention that a Lieutenant and Captain were on the scene also is insufficient to create an issue of material fact with regard to municipal liability. Simply being on the scene does not mean that these individuals were final policymakers for any of the defendant municipalities or that any policymaking authority was designated to them.").

## IV.  CONCLUSION

For the foregoing reasons, the motion for judgment on the pleadings and motion for a more definite statement (Dkt. No. 18) is **GRANTED IN PART** and **DENIED IN PART**. Judgment on the pleadings is **ENTERED** as to Counts 3, 5, and 7. These Counts are **DISMISSED WITH PREJUDICE**. As for Counts 1, 2, 4, and 6, Defendants' motion for a more definite statement is **GRANTED**. Plaintiff is **ORDERED** to file a third amended complaint within 60 days of receipt of this Order.

The Clerk of Court is **ORDERED** to serve Plaintiff a copy of this Order, with return receipt requested.

It is so **ORDERED**.

**SIGNED** August 24, 2022.

Marina Garcia Marmolejo
United States District Judge